**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ORIENT OVERSEAS CONTAINER LINE LIMITED, OOCL (EUROPE) LIMITED, and OOCL (USA) INC., <br> *Plaintiffs,* <br><br> v. <br><br> THE UNITED STATES OF AMERICA, FEDERAL MARITIME COMMISSION, a federal administrative agency, ERIN M. WIRTH, in her official capacity as an Administrative Law Judge, and LINDA S. HARRIS CROVELLA, in her official capacity as an Administrative Law Judge, <br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | C. A. No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUCTIVE RELIEF**

Plaintiffs Orient Overseas Container Line Limited, OOCL (Europe) Limited, and OOCL (USA) Inc., (collectively, "OOCL") through their attorneys, Blank Rome LLP, bring  this action for declaratory and injunctive relief, alleging as follows:

**JURISDICTION AND VENUE**

1.      This action arises under the Constitution and laws of the United States.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 over OOCL's claims that fundamental structural aspects of the FMC ALJ proceedings against it violate the Constitution.  See, e.g., *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190–96 (2023)

2.      The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

3.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1).  Defendants are the United States, an independent agency of the United States, and officers of an agency of the United States acting in their official capacity.  OOCL resides in this district because its general agent OOCL (USA) Inc., acting on its behalf, possesses leased property within this district, and it contracts with shippers and other service providers in this district on OOCL's behalf.  OOCL regularly and systematically conducts business in this district: OOCL operates multiple trans-Pacific and trans-Atlantic service routes whereby its container vessels call at container terminals in the Port of Houston; OOCL utilizes a depot in La Porte, Texas; and OOCL has an extensive intermodal network within the state of Texas that routes its containers to and from Houston.  OOCL consents to personal jurisdiction in this district for the purposes of resolving its constitutional claims.

**PARTIES**

4.    Plaintiff Orient Overseas Container Line Limited is a container shipping and logistics service company formed under the laws of Hong Kong with headquarters in Hong Kong, and operates in the U.S. Trans-Pacific trades.

5.    Plaintiff OOCL (Europe) Limited is a private limited entity incorporated in the UK with headquarters in Suffolk, United Kingdom, and operates in the U.S. Trans-Atlantic trades.

6.    Plaintiff OOCL (USA) Inc. is a New York corporation with offices at 7600 West Tidwell, Suite 710, Houston, TX 77040.  OOCL (USA) Inc. is Orient Overseas Container Line Limited and OOCL (Europe) Limited's general agent in Texas.  OOCL's container ships regularly call at the container terminals in the Port of Houston.

7.    The United States of America is a Defendant in this action.

8.    Defendant the Federal Maritime Commission is an independent administrative

agency of the United States, headquartered in Washington, D.C.

9. Defendant Erin M. Wirth is an administrative law judge within the FMC, who presides over the ALJ proceeding against OOCL that was initiated by Bed Bath & Beyond, Inc., bearing FMC Docket No. 23-02. She is sued in her official capacity.

10. Defendant Linda S. Harris Crovella is an administrative law judge within the FMC, who presides over the ALJ proceeding against OOCL that was initiated by Neilsen & Bainbridge, LLC, bearing FMC Docket No. 25-31. She is sued in her official capacity

## INTRODUCTION

11. Normally, when one party accuses another party of breaching their contract, the judicial system adjudicates their dispute.

12. Here, however, OOCL is being compelled to defend itself against contractual claims brought by Bed Bath & Beyond Inc. n/k/a 20230930-DK-BUTTERFLY-1, Inc. ("BBBY") seeking tens of millions of dollars in alleged damages in an unconstitutional adjudicative proceeding (Docket No. 23-02) before the Federal Maritime Commission ("FMC"), as overseen by an administrative law judge ("ALJ").

13. Separately, Neilsen & Bainbridge, LLC ("NBG") has also initiated FMC proceedings against OOCL (Docket No. 25-31), likewise seeking recovery of millions of dollars in another action being overseen by an ALJ.

14. Put simply, the situation OOCL finds itself in is constitutionally untenable, and OOCL should be protected from having to further defend itself in these constitutionally-defective FMC proceedings.

15. OOCL is an ocean common carrier, and is therefore generally subject to the Shipping Act of 1984, 46 U.S.C. § 40101, *et seq*. Broadly, the Shipping Act establishes a federal

framework for regulating entities involved in the business of the ocean carriage of goods.

16.    The Federal Maritime Commission is the independent federal agency responsible for regulating the U.S. international ocean transportation system.[1]  Among other responsibilities, the FMC ensures that common carriers' tariff rates and charges are published in private, automated tariff systems and electronically available; reviews and monitors agreements among ocean common carriers and marine terminal operators serving the U.S. foreign ocean borne trades; and monitors rates, charges, and rules of government-owned or –controlled carriers to ensure they are just and reasonable.

17.    As it relates to this declaratory judgment action, the FMC also provides a forum for exporters, importers, and other members of the shipping public to seek relief from ocean shipping practices or disputes that purportedly impede the flow of commerce.

18.    Under 46 U.S.C. § 41301, a person alleging violations of the Shipping Act may file a sworn complaint with the FMC to seek reparations for an alleged injury caused by the claimed violations.[2]  The FMC, in turn, refers such complaints for initial determination to the Office of

---

[1]    The scope of the FMC's powers has changed multiple times over the years.  In 1984, Congress enacted the Shipping Act of 1984 (P.L. No. 98-237), which stripped the FMC of its former authority (under the Shipping Act, 1916 (P.L. No. 64-260), to prohibit rates it found "unjust or unreasonable".  And in 1998, Congress explicitly decided to de-regulate one-on-one dealmaking between ocean common carriers and their shipper customers, specifically reducing the authority to regulate service contracting to three narrow prohibitions: (1) status-based discrimination against ocean transportation intermediaries; (2) unjust discrimination against ports; and (3) undue prejudice regarding ports.  As a result of these congressional decisions to remove Commission power over rates and individually-negotiated service contracts, the Shipping Act is simply inapplicable to the dispute against OOCL presently pending in the FMC, as will be further explained below.

[2]    In such proceedings, the parties may engage in discovery (46 U.S.C. § 41303), and request hearings (§ 41304).  If a claimant shows the Act has been violated, the FMC may assess penalties (§ 41109(a)), award damages of up to double the amount of the actual injury, grant attorneys' fees (§ 41305), and/or provide a means to obtain equitable relief (§ 41307).  As the Supreme Court has observed, "the similarities between FMC proceedings and civil litigation are overwhelming." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 759 (2002).

Administrative Law Judges pursuant to 46 C.F.R. § 501.3(e).

19.     Again, OOCL is presently defending itself against an action before an FMC ALJ brought by BBBY.  BBBY's complaints fall into two general categories: complaints about service (the amount of space allocated by OOCL to the shipper) and prices under its service contracts, and complaints about the charges it incurred for demurrage and detention.  OOCL respectfully submits that BBBY's claims cannot properly be considered by the ALJ in the first instance, because the FMC does not possess subject matter jurisdiction over breach of contract claims, and the Shipping Act provisions BBBY relied upon do not afford relief to the shipper with respect to space allocation issues.

20.     On April 24, 2026, the ALJ issued an initial decision awarding in excess of $45 million in reparations against OOCL for alleged violations of the Shipping Act.  The decision was replete with legal and factual errors, including:

a. finding retaliation by OOCL when it reduced its minimum quantity commitment ("MQC") to BBBY by 17% during service contract negotiations in 2022.  In fact, OOCL reduced ALL beneficial cargo owners' MQC by 17% across the board that year.  OOCL forecasted a demand reduction, which came to fruition;

b. finding that a letter sent by OOCL to BBBY constituted an implied threat of an FMC complaint and finding that such letter supported a retaliation claim even though the author of the letter testified under oath that he did not intend to make such a threat;

c. finding it was not necessary to establish a causal relationship between some 4,000 containers that BBBY said it was forced to move via other ocean carriers or non-vessel operating common carriers because OOCL declined to carry its cargo, when no data about bookings made or attempted was presented by the shipper;

d. finding that OOCL's space allocation and container booking systems were unreliable (without comparing OOCL's systems against any other systems or addressing what such systems require to be considered reliable) based upon anecdotal testimony, much of which did not even relate to the shipper,

and thereby dispensed with the only booking data in the case, which demonstrated that OOCL in fact met its MQC obligations;

e.  denying OOCL's motion to re-open discovery to ascertain whether shipper's claims against other ocean carriers are duplicative;

f.  finding that BBBY's signatures on numerous service contract amendments and other service contracts were involuntarily made, which completely undermines freedom of contract principles (the shipper always had the option of not signing) and shows the impropriety of this action pending before the Commission, which lacks jurisdiction over breach of contract claims; and,

g.  failing to afford OOCL an oral hearing as provided by the FMC's regulations after OOCL made a request for same.

21.    Exceptions to the ALJ's BBBY decision are currently due to the FMC by May 15, 2026.

22.    In the second matter at issue, NBG has asserted claims against OOCL seeking damages for alleged minimum quantity commitments ("MQC") shortfalls, and various charges applied over multiple shipping years.  In the NBG proceeding, the parties have commenced the discovery process – fact witness depositions are due to be completed by June 22, 2026, expert discovery is due to be completed by July 31, 2026; and discovery closes July 31, 2026.  Thereafter, NBG's opening brief is due August 28, 2026, and OOCL's opposition brief is due for submission to the ALJ on September 25, 2026.

23.    OOCL brings this action for a temporary restraining order and preliminary injunction to vacate the BBBY ALJ's order/initial decision and suspend the continued enforcement of both the BBBY and NBG proceedings before FMC.  OOCL's action before this Court is brought to highlight and protect OOCL from the Constitutional violations which the pending FMC proceedings inflict.

24. When the FMC delegates and refers complaints to an ALJ in the Office of Administrative Law Judges (see 46 C.F.R. § 501.3(e)[3]), the ALJ thereafter takes evidence, resolves contested questions of fact and law, and renders an initial decision on the claims. See 46 C.F.R. § 502.223. See also Administrative Procedure Act, 5 U.S.C. § 556(c).

25. This system violates the Constitution because the ALJs are insufficiently accountable to the head of the executive branch, the President.

26. Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 591 U.S. 197, 203 (2020).

27. To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

28. The Fifth Circuit has held that this requirement of removal power extends to administrative law judges because they "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), aff'd on other grounds, 144 S. Ct. 2117 (2023).

29. But the President cannot meaningfully control or oversee ALJs if they are insulated by "[t]wo layers of for-cause protection"—that is, if the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id*.; see *Free Enter. Fund*, 561 U.S. at 492–508.

30. In *Jarkesy*, the Fifth Circuit held that the removal restrictions for the administrative law judges of Securities and Exchange Constitution are unconstitutional. *Jarkesy*, 34 F.4th at 465.

---

[3]   46 C.F.R. § 501.3(e) provides that "The Office of Administrative Law Judges holds hearings and renders initial decisions in adjudicatory proceedings as provided in 46 U.S.C. chapters 401-413 and 441 and other applicable laws, and other matters assigned by the Commission, in accordance with the Administrative Procedure Act and the Commission's Rules of Practice and Procedure in part 502 of this chapter."

31.    District courts within the Fifth Circuit have concluded the same reasoning applies to ALJs serving under the Department of Labor.  In this regard, Judge Sim Lake of the Southern District of Texas held:

> The court agrees that *Jarkesy* is dispositive.  SEC ALJs' authority to conduct hearings are essentially the same as DOL ALJs, and DOL ALJs are therefore 'Officers of the United States' under *Lucia*.  *Jarkesy* therefore requires that DOL ALJs not be insulated by two layers of good-cause removal protections.

*ABM Indus. Groups, LLC v. United States Dep't of Lab*., 756 F. Supp. 3d 468, 476 (S.D. Tex. 2024), vacated per agreed motion of parties, No. 4:24-CV-03353, 2024 WL 6076919 (S.D. Tex. Dec. 23, 2024).[4]  So too have district courts determined that the rule of *Jarkesy* also applies to NLRB ALJs.  See e.g., *Aunt Bertha v. Nat'l Lab. Rels. Bd*., No. 4:24-CV-00798-P, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024) ("the NLRB ALJs are afforded the same two layers of for-cause removal protections that the Fifth Circuit found to be unconstitutional with regard to the SEC ALJs."), aff'd sub nom. *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd*., 151 F.4th 761 (5th Cir. 2025) (affirming grant of preliminary injunctions issued in three cases consolidated for appeal, "The Constitution does not countenance unlawful power.").

32.    Here, there is no substantive difference between the SEC ALJs, DOL ALJs or NLRB ALJs addressed in the foregoing cases and the FMC ALJs involved in BBBY and NBG proceedings against OOCL.

---

[4]    See also *Nicholas Services, LLC, et al. v. United States Department of Labor, et al*., No. 3:25-CV-31-DMB-RP, 2026 WL 905124 (N.D. Miss. Mar. 31, 2026), granting preliminary injunction enjoining DOL ALJs from continuing the administrative proceedings complained of.  See *id*. at * 11: "The Court also finds that the restrictions on DOL ALJ removal are sufficiently onerous that the President has lost the ability to take care that the laws are faithfully executed because, like in *Jarkesy*, if the President wanted a DOL ALJ to be removed, at least two layers of for-cause protection stand in the way. 34 F.4th at 465.  Consequently, the statutory removal restrictions complained of here can be held to be unconstitutional.  For that reason, the plaintiffs have demonstrated a likelihood of success on their claim."

33. Yet the President cannot adequately control the FMC ALJs' performance because the President's ability to remove FMC ALJs is impeded by two layers of for-cause removal protection: like SEC, DOL and NLRB ALJs, FMC ALJs are removable only for cause as determined by Merit Systems Protection Board ("MSPB") Members, who are themselves removable only for cause. See 5 U.S.C. §§ 1202(d), 7521(a); *ABM Indus. Groups, LLC*, 756 F. Supp. 3d at 476 ("DOL ALJs are protected by two layers of restrictions: they can only be removed for cause, a decision that is made by the MSPB, who the President in turn can only remove for inefficiency, neglect of duty, or malfeasance in office.").

34. Significantly, the foregoing conclusion – that two layers of for-cause removal protection is unconstitutional – is expressly shared by the Department of Justice, which admitted that two-tiered removal systems violate the Appointments Clause. See Ex. 1, a February 20, 2025 Memorandum from former Acting Solicitor General Sarah M. Harris to Speaker of the House Mike Johnson, which states that "the Department of Justice has concluded that the multiple layers of removal restrictions for ... ALJs ... in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution, ... the Department will no longer defend them in court, and ... the Department has taken that position in ongoing litigation."

35. The Court should enter the declaratory and injunctive relief OOCL seeks to ensure that OOCL is not further subjected to unlawfully structured administrative proceedings, and vacate the ALJ's BBBY decision/initial decision because ALJ Wirth did not have the constitutional authority to issue it in the first instance (or to issue any of the preliminary ruling or determinations that preceded its issuance).

**FACTS**

**A.      The BBBY Proceeding**

36.     BBBY filed its complaint with the FMC on April 27, 2023, against OOCL.  The complaint was referred to Administrative Law Judge Erin M. Wirth on May 2, 2023.

37.     On May 22, 2023, OOCL answered that Complaint and requested an oral hearing be scheduled in Washington, D.C., which was never set by the ALJ.

38.     On July 8, 2024, BBBY filed a First Amended Complaint, which OOCL answered on September 6, 2024.

39.     The parties completed substantive discovery in accordance with ALJ Wirth's scheduling orders.

40.     On November 27, 2024, OOCL challenged the verification accompanying the First Amended Verified Complaint as false, which motion the ALJ denied.

41.     On December 20, 2024, OOCL challenged BBBY's purported liability expert, whose methodology was fundamentally flawed because he failed to establish any causation between OOCL's acts or omissions and BBBY's alleged damages, which motion the ALJ denied.

42.     As required by the ALJ's Scheduling Order, the parties submitted respective briefs, proposed findings of fact, and objections to the other party's proposed findings of fact.

43.     On April 24, 2026, the ALJ issued her Initial Decision awarding in excess of $45,000,000 against OOCL.

44.     The deadline for submission of exceptions to the ALJ's Initial decision is May 15, 2026.

**B.      The NBG Proceeding**

45.      NBG filed its complaint against OOCL with the FMC on January 8, 2025, which OOCL answered on January 13, 2025.

46.      The complaint was referred to Administrative Law Judge Linda S. Harris Crovella.

47.      Pursuant to the terms of ALJ Crovella's scheduling orders, the parties have commenced the discovery process – fact witness depositions are due to be completed by June 22, 2026, expert discovery is due to be completed by July 31, 2026; and discovery closes July 31, 2026.  Thereafter, NBG's opening brief is due August 28, 2026, and OOCL's opposition brief is due for submission to the ALJ on September 25, 2026.

<strong>COUNT I – DECLARATORY AND INJUNCTIVE RELIEF</strong>

48.      OOCL restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

49.      FMC ALJs in general and ALJs Wirth and Crovella in particular are "Officers of the United States" under the Constitution's Appointments Clause because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions.  See *Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Jarkesy*, 34 F.4th at 464; *ABM Indus. Groups, LLC*, 756 F. Supp. 3d at 476.  Accord *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023) (Fourth Circuit recognizing that DOL ALJs are officers of the United States because they "conduct trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions.").  See also 46 C.F.R. §§ 501.3(e), 502.25(b), 502.227.

50. These activities, even though they take a judicial form, are still exercises of "the "'executive Power,'" for which the President is ultimately responsible." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (citations omitted).

51. Given FMC ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

52. Yet the President cannot adequately control the performance of the DOL ALJs' functions because they are insulated from presidential control by two layers of for-cause removal protection. See *Free Enter. Fund*, 561 U.S. at 492–508.

53. Firstly, FMC ALJs are removable only for cause, as determined by the MSPB. 5 U.S.C. § 7521(a).

54. Secondly, MSPB Members also are removable only for cause—"inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

55. The statutes' two layers of removal protection impermissibly restrict presidential authority and thus violate Article II of the Constitution. See *Free Enter. Fund*, 561 U.S. at 492–508. See also Ex. 1.

56. But for these unlawful removal restrictions, ALJ Wirth and ALJ Crovella would face the prospect of removal by the President based on their respective conduct during the BBBY and NBG proceedings.[5]

57. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury." *Axon Enter.*,

---

[5] This statement is not intended to personally attack either ALJ Wirth or ALJ Crovella. The point is one of structure and constitutional sufficiency.

12

598 U.S. at 191 (citation omitted).

58.     Merely being subject to a hearing and decision in proceedings before insulated ALJs causes OOCL ongoing harm.  See, e.g., *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), aff'd and remanded sub nom. *Axon Enter.*, 143 S. Ct. 890.

59.     This harm exists even if a President does not actively desire to remove a particular ALJ, because the mere potential for removal influences how ALJs carry out their duties.  Congress sought to make ALJs politically independent for a reason: it wanted to insulate them from political pressures.  See, e.g., *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part and dissenting in part).

60.     In addition, a showing of particularized cause and effect between the removal restrictions and ALJ actions is unnecessary to declare that the removal restrictions are unconstitutional.

61.     OOCL is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Plaintiffs are] subject will be enforced only by a constitutional agency accountable to the Executive."  *Free Enter. Fund*, 561 U.S. at 513.

62.     OOCL is also entitled to injunctive relief.  Without interim injunctive relief from this Court, OOCL is required to undergo unconstitutional proceedings before insufficiently accountable agency officials, and has been harmed by the unconstitutional initial decision issued in the BBBY proceeding.

63.     OOCL has a strong likelihood of success on this claim for the reasons detailed above.

64.     But unless Defendants are enjoined from proceeding against OOCL before ALJs unconstitutionally insulated from presidential oversight and ALJ Wirth's unconstitutional initial

decision is vacated, OOCL will be irreparably harmed.

65.     Deprivation of an individual constitutional right is often an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  And having to appear in unconstitutionally structured agency proceedings is an injury that cannot be remedied once the proceeding is over.  See *Axon Enter.*, 598 U.S. at 191.

66.     The harm to OOCL, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the government if such relief is granted.

67.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting constitutional rights.

## PRAYER

WHEREFORE, premises considered, OOCL requests that the Court order the following relief and enter a judgment:

1.    Declaring the BBBY and NBG FMC proceedings before the FMC ALJs void due to their unconstitutional nature based on the ALJs' appointment being violative of Article II of the U.S. Constitution;

2.    Preliminarily enjoining Defendants from subjecting OOCL to unconstitutionally structured administrative proceedings in both the BBBY and NBG FMC proceedings and vacating ALJ Wirth's initial decision in the BBBY proceeding pending the final resolution of this action;

3.    Permanently enjoining Defendants from subjecting OOCL to unconstitutionally structured administrative proceedings;

4.    Awarding OOCL its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

5.    Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Houston, Texas

May 5, 2026

Respectfully submitted,

BLANK ROME LLP /

*s/ Zachary Cain*
Keith B. Letourneau (Attorney-in-charge)
State Bar No. 00795893
Federal I.D. No. 20041
Zachary Cain
State Bar No. 24078297
Federal I.D. No. 1829905
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605
kletourneau@blankrome.com
zcain@blankrome.com

*Attorneys for Orient Overseas Container Line Limited, OOCL (Europe) Limited, and OOCL (USA) Inc.*