**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ORIENT OVERSEAS CONTAINER LINE LIMITED, OOCL (EUROPE) LIMITED, and OOCL (USA) INC., *Plaintiffs,* | §<br>§<br>§<br>§<br>§ | C. A. No. 4:26-cv-03606 |
| v. | §<br>§ | |
| THE UNITED STATES OF AMERICA, FEDERAL MARITIME COMMISSION, a federal administrative agency, ERIN M. WIRTH, in her official capacity as an Administrative Law Judge, and LINDA S. HARRIS CROVELLA, in her official capacity as an Administrative Law Judge *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiffs Orient Overseas Container Line Limited, OOCL (Europe) Limited, and OOCL (USA) Inc., (collectively, "OOCL") move under Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order and a preliminary injunction enjoining Defendants from issuing any further rulings, conducting any hearings, or otherwise continuing with the administrative proceedings discussed herein, and vacating Administrative Law Judge Wirth's Initial Decision in Federal Maritime Commission Docket No. 23-02.

Briefly, OOCL should be granted immediate injunctive relief for the following reasons: *Firstly*, OOCL will prevail on the merits. Multiple courts – including the Fifth Circuit – have held the ALJ system at issue violates the Appointments Clause in Article II of the Constitution. Moreover, the Department of Justice has expressly admitted this to be the case. *Secondly*, being subject to unconstitutional proceedings and being subjected to an unconstitutional initial decision constitute irreparable injury. *Thirdly*, Defendants are not harmed by being required to follow the

Constitution. *Fourthly*, the public equities require that the Constitution be enforced.

The need for relief is urgent. As this motion will make clear, Defendants are conducting unconstitutionally structured administrative proceedings against OOCL. The ALJ in the matter pending as Federal Maritime Commission ("FMC") Docket No. 23-02 has already made significant decisions in that administrative proceeding, including her initial decision awarding in excess of $45 million in reparations against OOCL for alleged violations of the Shipping Act and the ALJ and FMC will continue to do so as the proceeding moves forward to its conclusion. The requested injunctive relief is necessary to prevent OOCL from suffering irreparable harm before the Court can adjudicate this lawsuit's claims. To secure relief in advance of upcoming administrative-proceeding deadlines and prevent irreparable harm from further participation in those unconstitutional proceedings, OOCL respectfully requests that the Court rule on this motion by **May 13, 2026**. OOCL respectfully requests an oral hearing on this motion as soon as practicable.

## INTRODUCTION

OOCL has filed this action because Defendants are subjecting OOCL to administrative proceedings that violate the Appointments Clause of the Constitution.

Briefly, OOCL is an ocean common carrier who, to the extent that it acts as a common carrier to the general public and carries shipments pursuant to its published tariffs, is subject to the terms of the Shipping Act and related regulations that are implemented and enforced by the Federal Maritime Commission. Bed Bath & Beyond Inc. ("BBBY") (now known as "20230930-DK-Butterfly-1, Inc.") brought a complaint against OOCL seeking in excess of $165 million in damages in connection with negotiated service contracts between BBBY and OOCL for the ocean carriage of containers, pending as FMC Docket No. 23-02. Upon receiving the complaint, the

FMC referred the dispute to an Administrative Law Judge ("ALJ") to oversee discovery, make factual determinations, and issue an initial decision on the merits of BBBY's claims.

In a separate FMC proceeding not as advanced as the BBBY matter, Neilsen & Bainbridge, LLC ("NBG") also filed a complaint against OOCL with the FMC (Docket No. 25-31), likewise seeking recovery of millions of dollars in another action being overseen by an FMC ALJ.

These FMC proceedings are constitutionally deficient, and OOCL should be protected from further constitutional injury by being subjected to an unconstitutional initial decision by the ALJs, as well as other decisions, and being subject to and forced to participate in these defective proceedings. Because OOCL "is likely to succeed on the merits," "likely to suffer irreparable harm in the absence of preliminary relief," has "the balance of equities" tipping in OOCL's favor, and seeks an injunction that is "in the public interest," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), issuance of a preliminary injunction is warranted.

Put simply, the two FMC proceedings against OOCL violate the Constitution's separation of powers because the ALJs overseeing and deciding the cases are situated in the Executive Branch yet unaccountable to the President.

The Fifth Circuit has held that under the Appointments Claus, executive branch ALJs can validly exercise their power ***only*** if the President can control and/or remove them. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). *Jarkesy* held that Securities and Exchange Commission ("SEC") ALJs – who have the same removal protections as FMC ALJs – were unconstitutionally insulated from presidential control. *Id.* Namely, SEC ALJs may be removed "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]." 5 U.S.C. § 7521(a). The President may remove MSPB members only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). These "[t]wo

3

layers of for-cause protection" impedes the President's ability to control ALJs and violates the Constitution. *Jarkesy*, 34 F.4th at 463.

In the time since *Jarkesy*, at least three district courts have applied *Jarkesy* to Department of Labor ("DOL") ALJs and recognized their dual layer of protection is identical to that of SEC ALJs. See *ABM Indus. Groups, LLC v. United States Dep't of Lab.*, 756 F. Supp. 3d 468, 476 (S.D. Tex. 2024)[1] ("The court agrees that *Jarkesy* is dispositive. SEC ALJs' authority to conduct hearings are essentially the same as DOL ALJs, and DOL ALJs are therefore 'Officers of the United States' under *Lucia*. *Jarkesy* therefore requires that DOL ALJs not be insulated by two layers of good-cause removal protections."); *Kinder Morgan, Inc. v. United States Department of Labor,* 2025 WL 3635155, at *6 (S.D. Tex. Dec. 15, 2025) (court entered preliminary injunction enjoining continuation of Department of Labor ALJ proceeding because of an unconstitutionally appointed ALJ). See also *Nicholas Services, LLC, et al. v. United States Department of Labor, et al.*, No. 3:25-CV-31-DMB-RP, 2026 WL 905124 at *11 (N.D. Miss. Mar. 31, 2026) ("The Court also finds that the restrictions on DOL ALJ removal are sufficiently onerous that the President has lost the ability to take care that the laws are faithfully executed because, like in *Jarkesy*, if the President wanted a DOL ALJ to be removed, at least two layers of for-cause protection stand in the way. 34 F.4th at 465. Consequently, the statutory removal restrictions complained of here can be held to be unconstitutional.").

So too have district courts determined that the rule of *Jarkesy* also applies to NLRB ALJs. See e.g., *Aunt Bertha v. Nat'l Lab. Rels. Bd.*, No. 4:24-CV-00798-P, 2024 WL 4202383, at *2

---

[1] The order was later supplanted by the district court, which entered a preliminary injunction, see *ABM Indus. Groups, LLC v. United States Dep't of Labor*, 756 F. Supp. 3d 468, 472 (S.D. Tex. 2024), and thereafter vacated per agreed motion of parties, see No. 4:24-CV-03353, 2024 WL 6076919 (S.D. Tex. Dec. 23, 2024).

(N.D. Tex. Sept. 16, 2024) ("the NLRB ALJs are afforded the same two layers of for-cause removal protections that the Fifth Circuit found to be unconstitutional with regard to the SEC ALJs."), aff'd sub nom. *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd*., 151 F.4th 761 (5th Cir. 2025) (affirming grant of preliminary injunctions issued in three cases consolidated for appeal, "The Constitution does not countenance unlawful power.").

**Because FMC ALJs are functionally identical to SEC, DOL, and NLRB ALJs, and are likewise subject to two layers of for-cause protection, their appointments are likewise unconstitutional**.

Moreover, the Department of Justice has publicly and explicitly **admitted** that the two-layered protection system applicable to ALJs violates the Appointments Clause and represented that it would not defend any constitutional challenge making that point.  See Exhibit 1, Feb. 20, 2025 DOJ Letter re Unconstitutionality of ALJ System.

OOCL can also establish irreparable harm, as being subject to an administrative proceeding that violates the Appointments Clause causes irreparable harm.  See *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024) ("The harm of being subjected to a proceeding by an unaccountable ALJ is an injury that cannot be undone [and] by definition irreparable.") (citations and quotation marks omitted)); *Space Expl. Techs. Corp. v. NLRB* ("*SpaceX* "), No. W-24-CV-00203-ADA, 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024) ("[H]aving to proceed before an unaccountable ALJ is an irreparable injury in the context of a Preliminary Injunction pursuant to a ALJ removal- protection claim[.]").  In short, there is no way to undo the injury stemming from "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," that "violate[s] the separation of powers." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).  Under binding Supreme Court and Fifth Circuit precedent, such harm

is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id*. (citation omitted).

Finally, the balance of equities and public interest favor OOCL. Interim relief will protect OOCL from constitutional injury and "[t]he government suffers no cognizable harm from stopping 'the perpetuation of unlawful agency action.'" *SpaceX*, 2024 WL 3512082, at *7. And "[t]he public interest is also served by maintaining our constitutional structure." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

## BACKGROUND

**A.     The BBBY Proceeding**

BBBY filed a complaint with the FMC on April 27, 2023, against OOCL. On May 22, 2023, OOCL answered that Complaint and requested an oral hearing, which was never set by the presiding FMC Administrative Law Judge, ALJ Erin M. Wirth. On July 8, 2024, BBBY filed a First Amended Complaint, which OOCL answered on September 6, 2024.

The parties completed substantive discovery in accordance with the ALJ's scheduling orders.

On November 27, 2024, OOCL challenged the verification accompanying the First Amended Verified Complaint as false, which motion the ALJ denied.

On December 20, 2024, OOCL challenged BBBY's purported liability expert, whose methodology was fundamentally flawed because he failed to establish any causation between OOCL's acts or omissions and BBBY's alleged damages, which motion the ALJ denied.

As required by ALJ Wirth's Scheduling Order, the parties submitted respective briefs, proposed findings of fact, and objections to the other party's proposed findings of fact.

On April 24, 2026, ALJ Wirht issued her Initial Decision awarding in excess of $45.0

million against OOCL.  The decision was replete with legal and factual errors, including:

a.   finding retaliation by OOCL when it reduced its minimum quantity commitment ("MQC") to BBBY by 17% during service contract negotiations in 2022.  In fact, OOCL reduced ALL beneficial cargo owners' MQC by 17% across the board that year.  OOCL forecasted a demand reduction, which came to fruition;

b.   finding that a letter sent by OOCL to BBBY constituted an implied threat of an FMC complaint and finding that such letter supported a retaliation claim even though the author of the letter testified under oath that he did not intend to make such a threat;

c.   finding it was not necessary to establish a causal relationship between some 4,000 containers that BBBY said it was forced to move via other ocean carriers or non-vessel operating common carriers because OOCL declined to carry its cargo, when no data about bookings made or attempted was presented by the shipper;

d.   finding that OOCL's space allocation and container booking systems were unreliable (without comparing OOCL's systems against any other systems or addressing what such systems require to be considered reliable) based upon anecdotal testimony, much of which did not even relate to the shipper, and thereby dispensed with the only booking data in the case, which demonstrated that OOCL in fact met its MQC obligations;

e.   denying OOCL's motion to re-open discovery to ascertain whether shipper's claims against other ocean carriers are duplicative;

f.   finding that BBBY's signatures on numerous service contract amendments and other service contracts were involuntarily made, which completely undermines freedom of contract principles (the shipper always had the option of not signing) and shows the impropriety of this action pending before the Commission, which lacks jurisdiction over breach of contract claims; and

g.   failing to afford OOCL an oral hearing as provided by the FMC's regulations after OOCL made a request for same.

The deadline for submission of exceptions to the ALJ's Initial decision is currently May 15, 2026.

7

B.    **The NBG Proceeding**

NBG filed its complaint against OOCL with the FMC on January 8, 2025, which OOCL answered on January 13, 2025.

The complaint was referred to Administrative Law Judge Linda S. Harris Crovella.

Pursuant to the terms of ALJ Crovella's scheduling orders, the parties have commenced the discovery process – fact witness depositions are due to be completed by June 22, 2026, expert discovery is due to be completed by July 31, 2026; and discovery closes July 31, 2026.  Thereafter, NBG's opening brief is due August 28, 2026, and OOCL's opposition brief is due for submission to the ALJ on September 25, 2026.

## ARGUMENT

A temporary restraining order and/or a preliminary injunction is proper when a movant establishes that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20; *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022).[2]  OOCL satisfies all four factors.

A.    **OOCL is Likely to Succeed on the Merits of Its Constitutional Claim**

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 591 U.S. 197, 203 (2020) (citation omitted).  The President does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926).  "He must execute them by the assistance of subordinates." *Id*.  Nevertheless, the

---

[2]    Under the Federal Rules, the primary substantive difference between a temporary restraining order and a preliminary injunction is that a temporary restraining order can be issued without notice and may last for only fourteen days.  Plaintiffs are not asking the Court to issue permanent relief without notice, but they have included the request for a temporary restraining order in the event that more time-limited relief can be heard sooner than the preliminary injunction.

responsibility is ultimately the President's, so his administrative officers must be subject to his oversight.  See *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010).  Put more simply, the President must have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L.*, 591 U.S. at 204.

Many federal agencies – including but not limited to the SEC, the NLRB, the DOL and the FMC – violate this requirement by utilizing ALJs the President cannot remove.  See 5 U.S.C. § 7521(a) ("An action may be taken against an administrative law judge appointed under section 3105 of this title by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board.")  MSPB members are likewise removable only for cause—"inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  As *ABM* held:  "DOL ALJs are protected by two layers of restrictions: they can only be removed for cause, a decision that is made by the MSPB, who the President in turn can only remove for inefficiency, neglect of duty, or malfeasance in office."  756 F. Supp. 3d at 476.

These two layers of protection violate the Appointments Clause.  The Supreme Court, in addressing similarly-situated executive officials, explained:

> The Act … not only protects Board members from removal except for good cause, but withdraws from the President any decision on whether that good cause exists.
>
> \*       \*       \*
>
> A second level of tenure protection changes the nature of the President's review.  Now the Commission cannot remove a Board member at will.  The President therefore cannot hold the Commission fully accountable for the Board's conduct, to the same extent that he may hold the Commission accountable for everything else that it does.  The Commissioners are not responsible for the Board's actions.  They are only responsible for their own determination of whether the Act's rigorous good-cause standard is met.  And even if the President disagrees with their determination, he is powerless to intervene—unless that determination is so unreasonable as to constitute inefficiency, neglect of duty, or malfeasance in office.  This novel structure does not merely add to the Board's independence, but transforms it.  Neither the President, nor anyone directly responsible to him, nor

9

even an officer whose conduct he may review only for good cause, has full control over the Board. The President is stripped of the power our precedents have preserved, and his ability to execute the laws—by holding his subordinates accountable for their conduct—is impaired. ***That arrangement is contrary to Article II's vesting of the executive power in the President.***

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 495–96 (2010) (emphasis added).

*Jarkesy* applied *Free Enter. Fund* to SEC ALJS, and *ABM* and *Nicholas Services* in turn applied both cases to DOL ALJs. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), aff'd on other grounds, 144 S. Ct. 2117 (2024); *ABM*, 756 F. Supp. 3d at 476 ("DOL ALJs are . . . 'Officers of the United States' under *Lucia*. *Jarkesy* therefore requires that DOL ALJs not be insulated by two layers of good-cause removal protections."); *Kinder Morgan, Inc. v. United States Department of Labor,* 2025 WL 3635155, at *6 ("Despite the fact that DOL ALJs serve sufficiently important executive functions, the President can only remove them if good cause is found by the MSPB. 5 U.S.C. § 7521 (a). And in turn, the President may remove members of the MSPB only for cause, namely, "inefficiency, neglect of duty, or malfeasance in office." Id. § 1202(d). Therefore, like the SEC ALJs in Jarkesy I, DOL ALJs receive two layers of protection from removal. Because the Fifth Circuit has held that statutory removal restrictions that create two layers of for-cause removal are unconstitutional, Plaintiff has shown a substantial likelihood of success on the merits."); *Nicholas Services*, 2026 WL 905124 at *11 (N.D. Miss. Mar. 31, 2026) ("[T]he restrictions on DOL ALJ removal are sufficiently onerous that the President has lost the ability to take care that the laws are faithfully executed because, like in *Jarkesy*, if the President wanted a DOL ALJ to be removed, at least two layers of for-cause protection stand in the way.").

In addition, numerous federal courts inside and outside the Fifth Circuit have held that the two-tiered protection afforded to NLRB ALJs (the same protection at issue here) violates the Appointments Clause. See, e.g., *Seton v. Nat'l Lab. Rels. Bd.*, No. 1-24-CV-01176-ADA, 2024

10

WL 4678057, at *1 (W.D. Tex. Oct. 18, 2024); *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494 at n.2 (S.D. Tex. July 29, 2024); *SpaceX*, 2024 WL 3512082, at *2 n.1; *VHS Acquisition Subsidiary No. 7 v. Nat'l Lab. Rels. Bd.*, No. 1:24-CV-02577 (TNM), 2024 WL 5056358, at *5 (D.D.C. Dec. 10, 2024); see also *Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223, at *4 (S.D. Ga. Mar. 25, 2024) (two-tiered protection for ALJs in the Office of the Chief Administrative Hearing violated the Appointments Clause).

Further, and finally, the DOJ has ***admitted*** that the two-tiered removal systems violate the Appointments Clause. In a letter to the Speaker of the House dated February 20, 2025, DOJ's Acting Solicitor General Sarah Harris said:

> the Department of Justice has concluded that the multiple layers of removal restrictions for administrative law judges (ALJs) in 5 U.S.C. 1202(d) and 752l(a) violate the Constitution, [and] the Department will no longer defend them in court…

> In *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), the Supreme Court determined that granting "multilayer protection from removal" to executive officers "is contrary to Article II's vesting of the executive power in the President." *Id*. at 484. The President may not "be restricted in his ability to remove a principal [executive] officer, who is in turn restricted in his ability to remove an inferior [executive] officer." *Ibid*.

> A federal statute provides that a federal agency may remove an ALJ "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. 7521(a). Another statute provides that a member of the Board "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. 1202(d). Consistent with the Supreme Court′s decision in *Free Enterprise Fund*, the Department has determined that those statutory provisions violate Article II by restricting the President's ability to remove principal executive officers, who are in turn restricted in their ability to remove inferior executive officers.

See Exhibit 1.

DOJ's position in the above quoted letter is consistent with the cases discussed in this brief, and DOJ perhaps foreshadowed the position in *ABM* – instead of appealing that order, DOJ settled

11

the case.

**B.      OOCL Faces Irreparable Harm Without Immediate Relief**

Unless this Court enjoins the FMC actions at issue, OOCL will suffer the irreparable harm of being subject to illegitimate administrative proceedings overseen by illegitimate decisionmakers in violation of OOCL's constitutional rights.  And ALJ Wirth has already issued an initial decision in the BBBY proceeding awarding in excess of $45 million in damages, which adversely affects OOCL's reputation in the marketplace.  In short, absent interim relief, OOCL will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

The Supreme Court has expressly held that being subjected to unconstitutionally structured agency proceedings is an irreparable injury:

> The harm Axon and Cochran allege is being subjected to unconstitutional agency authority—a proceeding by an unaccountable ALJ…  That harm may sound a bit abstract; but this Court has made clear that it is a here-and-now injury.  And—here is the rub—it is impossible to remedy once the proceeding is over, which is when appellate review kicks in.  Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers.  The court could of course vacate the FTC's order.  But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it won before the agency.  The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker.  And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone.  Judicial review of Axon's (and Cochran's) structural constitutional claims would come too late to be meaningful.

*Axon Enter., Inc.*, 598 U.S. at 191.

The same is true here.  OOCL is "being subjected to unconstitutional agency authority by an unaccountable ALJ," which qualifies as "a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*.  An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about

that order." *Id*. Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id*. Once the proceeding has concluded, a court cannot remedy that harm: "[a] proceeding that has already happened cannot be undone," and "[j]udicial review … would come too late to be meaningful." *Id*. at 191-92. This reasoning directly applies here and shows, by definition, this injury is irreparable.

The Fifth Circuit has recognized that if a removal claim is "meritorious," the plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control." *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 212–13 (5th Cir. 2021), aff'd and remanded sub nom. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023); see also *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication appropriate based on *Axon* because the plaintiff was likely to prevail on its claim that officers were unlawfully "shielded from removal").

Likewise, district courts in this Circuit have held that ALJ-removal protection claims present irreparable injury. *Energy Transfer*, 2024 WL 3571494, at *3 (holding "simply having to appear before an unaccountable ALJ is injury enough" to show irreparable harm); *SpaceX*, 2024 WL 3512082, at *6 (under *Axon* and *Cochran*, plaintiff had shown it would suffer irreparable harm from proceeding before an unconstitutionally insulated ALJ); cf. *SpaceX v. Bell*, 701 F. Supp. 3d 626, 631 (S.D. Tex. 2023) (citing *Axon* and stating that "if Plaintiff can show that OCAHO ALJs are unconstitutionally insulated from removal, Plaintiff will be harmed by having to proceed before an unaccountable ALJ").

Finally, while the constitutional injury establishes irreparable harm, the real-world burdens of these cases do, too. In the BBBY proceeding, OOCL is now confronted with a $45 million plus

reparations decision issued by an unconstitutional decisionmaker. OOCL will continue to suffer costs and time by its personnel preparing submissions in this proceeding. Further, the costs of undergoing this unconstitutional proceeding—including legal fees and preparation/participation time—are likely unrecoverable. Nor are these ordinary litigation costs; they are the product of compelled participation in an unconstitutional proceeding. See *Cochran*, 20 F.4th at 209-10 (disagreeing with the government that plaintiff complained only about "mere litigation expense[s]" where the plaintiff "challenges the entire legitimacy of [the] proceedings, not simply the cost and annoyance"). The same is true of the costs incurred in connection with the NBG proceeding.

**C.     The Balance of Harms and Public Interest Favor Relief**

OOCL also satisfies the two remaining injunction factors. When, as here, the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors tilt strongly in OOCL's favor.

Firstly, given OOCL's likelihood of success, an injunction would not harm Defendants because "[t]he government suffers no cognizable harm from stopping 'the perpetuation of unlawful agency action.'" *SpaceX*, 2024 WL 3512082, at *7 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)); see also, e.g., *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [safety standard] is illegitimate.").

For the same reason, an injunction would promote the public interest. *Louisiana*, 55 F.4th at 1022 ("[T]here is generally no public interest in the perpetuation of unlawful agency action." (citation omitted)); see also *BST Holdings*, 17 F.4th at 618 ("The public interest is … served by maintaining our constitutional structure[.]"); *Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."). "It is not in the public interest to have an increasingly

14

expansive Executive Branch that 'slip[s] from the Executive's control, and thus from that of the people.'"  *SpaceX*, 2024 WL 3512082, at *7 (quoting *Free Enter. Fund*, 561 U.S. at 499).  "Nor is it in the public interest for an agency to infringe upon the constitutional imperative that 'the judiciary remain[] truly distinct from … the executive.'"  *Id*. (quoting *Stern*, 564 U.S. at 483).

## CONCLUSION

OOCL has carried its burden on all four factors to show a right to a temporary restraining order and a preliminary injunction.  The Court should therefore enjoin the FMC and ALJs Wirth and Crovella from issuing any further rulings, vacate ALJ Wirth's initial decision and other decisions entered in the FMC cases, and suspend the pending administrative proceedings discussed herein pending resolution of this case, and further grant all such other and further relief as may be just and proper.

Houston, Texas

May 5, 2026

Respectfully submitted,

BLANK ROME LLP

*/s/ Keith B. Letourneau*
Keith B. Letourneau (Attorney-in-charge)
State Bar No. 00795893
Federal I.D. No. 20041
Zachary Cain
State Bar No. 24078297
Federal I.D. No. 1829905
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605
kletourneau@blankrome.com
zcain@blankrome.com

*Attorneys for Orient Overseas Container Line Limited, OOCL (Europe) Limited, and OOCL (USA) Inc.*

**CERTIFICATE OF SERVICE**

Because the Complaint associated with this action has only just been filed today, May 5, 2026, Defendants The United States of America, Federal Maritime Commission, Erin M. Wirth, and Linda S. Harris Crovella, have not yet been served, nor have their counsel yet had the opportunity to enter appearances herein. However, I hereby certify that we are taking immediate action to promptly serve Defendants in this matter, and that a copy of this Motion will also be included when serving Defendants with the Complaint that was filed contemporaneously with this submission.

Service will be provided to Defendants by providing a copy of this motion by certified mail to the following addresses:

Todd Blanche
Acting Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530

Federal Maritime Commission
800 North Capitol Street, N.W.
Washington, D.C. 20573-0001

The United States, U.S. Attorney for the Southern District of Texas
c/o Civil Process Clerk, U.S. Attorney's Office
1000 Louisiana St., Suite 2300
Houston, TX 77002

*/s/ Keith B. Letourneau*
Keith B. Letourneau

16