**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ORIENT OVERSEAS CONTAINER LINE LIMITED, et al, *Plaintiffs,* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C. A. No. 4:26-cv-03606 |
| v. | | |
| THE UNITED STATES OF AMERICA, et al, *Defendants.* | | |

**PLAINTIFFS' REQUEST FOR RECONSIDERATION / SUPPLEMENT TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiffs Orient Overseas Container Line Limited, OOCL (Europe) Limited, and OOCL (USA) Inc., (collectively, "OOCL") respectfully write to ask the Court to reconsider its recent denial of OOCL's request for a temporary restraining order ("TRO"). Because the same legal standard applies to OOCL's related request for a preliminary injunction, this filing also serves as a supplement to OOCL's motion seeking preliminary injunctive relief.

**Introduction**

The Court's Order (Dkt. 8) appeared skeptical of the timing of OOCL's motion seeking injunctive relief for asserted constitutional injuries. Respectfully, OOCL brought the administrative law judge ("ALJ") unconstitutionality issue to ALJ Wirth's attention in its Answering Brief fourteen months before she issued her Initial Decision ("ID"), see FMC Docket No. 23-02, Doc. 111 and 114, pp. 100-103. The ALJ opted not to address it in the ID, instead deferring to the federal courts to do so. *Id*., Doc. 143, p. 120. As an ocean

carrier, OOCL is a regulated entity of the Federal Maritime Commission ("FMC") and acted as a prudent regulated entity by raising its objections to the agency and giving it the opportunity to address the issues presented. OOCL also raised the ALJ's failure to provide OOCL the opportunity for a hearing in that same Answering Brief. *Id*., Doc. 111 and 114, pp. 103; see also 46 U.S.C. § 41304 ("The Federal Maritime Commission shall provide an opportunity for a hearing before issuing an order relating to a violation of this part or a regulation prescribed under this part."). To the extent the Court's Order raised the specter of waiver, we address further below the criteria for waiver of constitutional rights. That standard is not met in this case, such that OOCL did not waive its "Take Care" / "Separation of Powers" unconstitutionality or procedural due process arguments before this Court.

## I.     Irreparable Injury

The Court's denial of the TRO request focused on the "irreparable injury" element needed to justify immediate injunctive relief. And, while it is true that OOCL filed this action after the ALJ issued the ID on April 24, 2026, the fact remains that OOCL's primary complaint is the structural deficiency in both the Bed Bath & Beyond ("*BBBY*") proceeding (FMC Docket 23-02) and the Nielsen Bainbridge ("*NBG*") proceeding (FMC Docket 25-31). Just like the Supreme Court noted in *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), OOCL's "separation-of-powers claim is not about that order; indeed, [OOCL] would have the same claim had it won before the agency. The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id*. at 191.

Resolution of that claim by this Court under applicable binding authority requires recognition that the FMC ALJs' exercise of authority over OOCL in the *BBBY* and *NBG* matters violates Article II.  Such a finding will necessarily have the knock-on effect of vacating ALJ Wirth's recent ID (as it would all other orders, rulings and decisions in both FMC proceedings). That OOCL also pointedly addressed the *BBBY* ID in its submissions to the Court does not negate the required conclusion that simply being subjected to both of these ongoing FMC proceedings is a "here-and-now injury."  *Id*. (quoting *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U. S. 197, 212 (2020)).

On the issue of such an injury being *irreparable*, the Fifth Circuit recently explained *Axon*'s application as follows:

> [I]n *Axon*, the Supreme Court held that parties could bypass an agency's review scheme to challenge its very power to proceed.  The plaintiffs did not contest any specific "actions taken in the agency proceedings," but instead argued they were entitled not to be subjected to proceedings conducted by unconstitutionally insulated ALJs.  That is, they challenged the agency's "power to proceed at all."  The Court agreed, holding that "being subjected" to "unconstitutional agency authority" is "a here-and-now injury"—one "impossible to remedy once the proceeding is over."  A "proceeding that has already happened cannot be undone."
>
> ***That is this case.  The Employers' injury is Axon's injury: the "here-and-now injury" of "being subjected to unconstitutional agency authority."  And that harm is irreparable.***
>
> The NLRB insists *Collins* and *Community Financial* foreclose such a finding.  They do not.  *Collins* governs retrospective relief from final agency action.  The Employers here seek no such thing.  They challenge not past agency conduct but the validity of the ongoing proceeding itself.  *Community Financial* likewise involved retrospective relief from a final rule and required a causal link between the unconstitutional removal provision and the challenged agency action.  ***Here, the proceeding is the injury.  The harm is not downstream from the process—it is the process***.

3

> The NLRB tries to cabin *Axon* to jurisdiction. But its reasoning fits irreparable harm hand-in-glove: once an unconstitutional proceeding begins, the damage is done. That is the essence of irreparability. No further showing—such as how the outcome might differ under a valid structure—is required. Waiting until the end would be no remedy at all.
>
> Binding precedent, first principles, and common sense align: ***forcing the Employers to appear before an unconstitutionally structured agency inflicts irreparable harm***.

*Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.* ("*SpaceX*"), 151 F.4th 761, 779–80 (5th Cir. 2025) (emphasis added). That decision, issued on August 19, 2025 (i.e., well after OOCL filed its Answering Brief in the FMC action on February 27, 2025) is binding precedent on this Court.

In the *NBG* FMC proceeding, OOCL is ostensibly obligated under ALJ Crovella's scheduling orders to participate in discovery, with fact witness depositions to be completed by June 22. Briefing deadlines follow shortly thereafter. In the *BBBY* proceeding, on May 7, 2026, the FMC extended the deadline for OOCL to file exceptions to the ID until 60 days after its service (i.e., until June 23, 2026) from the original due date of May 15, 2026. Still, to comply with these June deadlines, OOCL is presently spending time, effort and expense to prepare exceptions to the ID – all in service of FMC proceedings that the Supreme Court indicates and the Fifth Circuit has held are constitutionally defective. These are real and immediate harms which justify the immediate imposition of a TRO, until the Defendants appear and have the opportunity to present their own arguments on the merits of OOCL's request for more permanent injunctive relief.

4

## II. Explanation of Timing

In denying the TRO request, the Court suggested that concerns of irreparable harm were "undermined by Plaintiffs' unexplained delay in seeking relief." Dkt. 8 at p. 8. Given the Fifth Circuit's clear pronouncement that the unconstitutional proceeding *is* the injury, "[a]nd *that harm is irreparable*," see *SpaceX*, 151 F.4th at 780 (emphasis added), OOCL respectfully disagrees with this Court's assessment, and is more than willing to explain its reasons as to why it choose now to bring this declaratory action.

## A. The ALJ Deferred Constitutional Issues to the Federal Courts

Significantly, OOCL squarely presented these unconstitutionality issues to ALJ Wirth in its briefing. But rather than substantively address OOCL's constitutionality concerns, ALJ Wirth's ID instead stated, "this decision declines to address the ALJ removal issue *as federal courts provide more appropriate forums for constitutional claims*." See the ID, Doc. No. 143 at p. 120 (emphasis added), FMC Docket No. 23-02 (available at https://www2.fmc.gov/readingroom/).

Thus, ALJ Wirth's recent deference and explicit referral of this issue to the federal courts for resolution is the first reason for bringing the matter before this Court now. Had ALJ Wirth considered the merits and reached the outcome that the Supreme Court and the Fifth Circuit did in the cases addressed above and in prior briefing, then the matter and injury to OOCL (at least in the *BBBY* proceeding) would have ended. But the ALJ chose not to do so.

Instead of issuing an administrative stay or some similar action to allow OOCL to seek the relief she concluded was best obtained from a federal court, ALJ Wirth proceeded to carry out an unconstitutional evaluation and rendered an unconstitutional decision relating to BBBY's claims against OOCL.  OOCL afforded the ALJ the opportunity to address the unconstitutionality issue before reaching the merits – an opportunity that was pointedly declined. OOCL should not now be penalized for challenging ALJ Wirth's appointment in the forum to which she explicitly deferred.

**B.    Issuance of the ID was Itself a Brand New, Fresh Constitutional Injury**

The second reason OOCL only moved for relief from this Court after the issuance of ID is likewise tied to pronouncements made, and notice only first provided to OOCL, in the ID itself.  Specifically, in the FMC proceeding, ALJ Wirth failed to set the matter for oral hearing, despite both BBBY requesting such a hearing be set in its original and amended Complaints, and OOCL also specifically requesting a hearing in its Answer and Amended Answer, and OOCL addressing the issue in its Answering Brief..

As addressed above, the Shipping Act specifically provides that "[t]he Federal Maritime Commission shall provide an opportunity for a hearing before issuing an order relating to a violation of this part or a regulation prescribed under this part."  46 U.S.C. § 41304.  Commission Rule 62 similarly provides that "[t]he presiding officer *will determine* whether an oral hearing is necessary."  46 C.F.R. § 502.62(a)(5) (emphasis added).  But at no point *prior* to issuing her ID did ALJ Wirth provide an opportunity for an oral hearing or inform the parties that she had apparently determined that no oral hearing would be

permitted. This failure by ALJ Wirth to timely determine whether oral hearing was necessary and communicate that determination to the parties – prior to issuing the ID – effectively denied OOCL due process of law. And, again, OOCL only learned of this constitutional due process violation via the issuance of the ID itself, on April 24, 2026.

As was the case for the Article II / Take Care / Separation of Powers constitutional issues regarding the ALJ's lack of authority to conduct the FMC proceeding, OOCL raised the point of this lack of oral hearing being a due process violation in its briefing to ALJ Wirth. Yet again, the ALJ gave OOCL's constitutional protections short shrift.

Briefly, in the ID, ALJ Wirth reasoned that because the parties had jointly filed status reports, which included proposed schedules without setting a hearing date, the parties had essentially waived their right to an oral hearing. See ID at p. 119 ("If either party believed that an oral hearing was necessary, they should have raised the issue when it could have been considered and included in the schedule."). There are profound problems with the ALJ's cavalier treatment of this oral hearing issue – ALJ Wirth's ID improperly shifts what was her affirmative duty under the Commission Rules onto the parties. It is not up to litigants to schedule hearing dates – litigants do not control the ALJ's docket. The tribunal does. Here, both parties requested an oral hearing via the method required under applicable regulations, but the ALJ failed to determine the necessity of same and convey notice of her decision to the parties. Instead, OOCL only received its first and only notice that an oral hearing would not be permitted in the same document which was ALJ Wirth's Initial Decision.

While not in keeping with 46 U.S.C. § 41304's mandate that the FMC "shall provide an opportunity for a hearing before issuing an order relating to a violation of this part provide," even the FMC's Informal Statement of Policy, *Avoidance of Trial-Type Oral Hearings*, recognized that oral testimony and cross-examination may be necessary where "there are genuine issues of material fact that cannot be resolved on the basis of ... documents or [where] the nature of the matters in issue is such that an oral hearing and cross-examination are necessary for the development of an adequate record."  17 S.R.R. 457 (1977) (attached as Ex. A).  See also *id*. (the Commission desires "to avoid time-consuming trial-type oral hearings **unless** there is a genuine need to resort to such techniques to resolve disputed issues of fact or examine fully complicated issues which require more than documentary evidence for resolution." (emphasis added)).

The Supreme Court has instructed that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  And, "[i]n any contested administrative hearing, admission of a party's testimony is particularly essential to a full and fair hearing *where credibility is a determinative factor*…" *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (citing *Mathews*, 424 U.S. at 343–44 for proposition that where credibility and veracity are critical to the decision-making process "written submissions are a wholly unsatisfactory basis for decision").

While this Court is not familiar with the underlying factual disputes and witness credibility issues, here are just a few that the ALJ should have considered:

8

- Whether BBBY's contract signatories voluntarily signed the service contracts and amendments thereto (the ALJ found that they were not voluntarily signed even though there was no record evidence of duress or coercion);

- Whether Patrick Hackett intended to make a threat to complain to the FMC when he signed and sent the October 18, 2021, letter to OOCL when he testified that he did not and had sent the same letter to all of BBBY's ocean carriers (the ALJ found that he did);

- Whether OOCL's personnel engaged in retaliation for the alleged threat above (a predicate to a finding of retaliation), which each denied under oath during their respective depositions;

- Whether David Kastin properly verified BBBY's First Amended Complaint when he invoked the attorney-client privilege at deposition even though he placed his personal knowledge at issue through his verification under oath; and,

- Whether BBBY's expert John McCown's opinions relating to OOCL's alleged violations were based upon a reliable methodology when he possessed no personal knowledge about the data presented to him by BBBY.

The ALJ should have considered these issues, among many others, in a full and fair oral hearing before reaching her decision.

Due to the *BBBY* ALJ's failure to comply with 46 U.S.C. § 41304 and Commission Rule 62, OOCL had no notice that an oral hearing would not be permitted until the very ID was issued that fixed OOCL's liability at over $45,000,000. At a fundamental level, due process requires appropriate notice and opportunity to be heard prior to adjudication of a disputed claim. See, e.g., *United States v. Villanueva-Diaz*, 634 F.3d 844, 850 (5th Cir. 2011) ("The essence of 'due process' is notice and a fair opportunity to be heard."). ALJ Wirth's actions deprived OOCL of both notice and opportunity to contest the lack of oral hearing before a ruling – a separate and new violation of OOCL's constitutional due process rights occurring only on April 24, 2026, simultaneous with the ID's publication.

9

C.    **Practical Considerations**

In addition to the foregoing and recent developments, there were also practical reasons for OOCL's timing in bringing this action.  As mentioned above, OOCL is an ocean common carrier, and therefore subject to regulation by the FMC to the extent that OOCL vessels carry cargo to and from the United States.  And OOCL's vessels are involved in billions of dollars' worth of trade and ocean carriage with the United States. There are real and substantial implications inherent in a regulated entity challenging the legitimacy and authority of a U.S. governmental entity tasked with regulating that sector.

Here, OOCL naturally wished to proceed cautiously, and there were multiple instances for the FMC to dismiss and dispose of what OOCL contends are meritless disputes between private, contracting parties – without implicating the very legitimacy of that regulating agency and its member ALJs.  But the recently issued *BBBY* ID made clear that no other option would suffice.

The closing of the Court's order notes that "[i]t remains to be determined whether … inaction by Plaintiffs amounts to waiver of the challenges now asserted."  Dkt. 8.  Here, OOCL's timing in bringing this declaratory judgment action simply cannot give rise to a waiver finding.  To be enforceable, a waiver of constitutional rights must be "voluntary, knowing, and intelligently made," or "an intentional relinquishment or abandonment of a known right or privilege."  *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185–86, 92 (1972) (internal quotations and citations omitted); see also *United States v. Burns*, 433 F.3d 442, 449 (5th Cir. 2005) (citing *Brady v. United States*, 397 U.S. 742 (1970)).  "[A] waiver

of constitutional rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972).  Moreover, "[w]hen government action is involved, ***members of the public are entitled to assume that public officials will act in accordance with law***." *Env't Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 479 (5th Cir. 1980) (emphasis added; citing *Save Our Wetlands, Inc. (SOWL) v. United States Army Corps of Engineers*, 549 F.2d 1021, 1027-28 (5th Cir.)).  OOCL brought these issues to the ALJ's attention and at no time ever voluntarily, knowingly, or intentionally waived its constitutional rights.

OOCL presumed that FMC ALJs would act in accordance with the Constitution when presented with the foregoing concerns, and in performing their administrative duties generally.  When ALJ Wirth's *BBBY* ID issued, without a prior determination on OOCL's request for oral hearing (a new constitutional due process injury to OOCL), and explicitly declining to take up and consider the Article II defects raised by OOCL and instead counseling that "federal courts provide more appropriate forums for constitutional claims," OOCL took prompt action – initiating this action only seven (7) business days later.  That is no inexcusable delay.

### III.    The Ultimate Relief Sought

For the purposes of the TRO / Preliminary Injunction motion, OOCL's primary and immediate request is simply the cessation of all activity (i.e., discovery, briefing deadlines, etc.) in the two constitutionally-deficient FMC proceedings pending against it, and recognition that the orders issued in those FMC matters are necessarily vacated due to

11

unconstitutional taint.  With respect to OOCL's declaratory judgment action generally, the

Supreme Court has already outlined the proper outcome:

> This Court has … held that the "appropriate" remedy for an adjudication
> tainted with an appointments violation is a new "hearing before a properly
> appointed" official.  [*Ryder v. United States*, 515 U.S. 177 (1995)], at 183,
> 188, 115 S.Ct. 2031.  And we add today one thing more.  That official cannot
> be Judge Elliot, even if he has by now received (or receives sometime in the
> future) a constitutional appointment.  Judge Elliot has already both heard
> Lucia's case and issued an initial decision on the merits.  He cannot be
> expected to consider the matter as though he had not adjudicated it before.
> To cure the constitutional error, another ALJ (or the Commission itself) must
> hold the new hearing to which Lucia is entitled.

*Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251–52 (2018).

The same result should follow here.  If any actions against OOCL in the FMC are

to proceed, they must have newly appointed, constitutionally-sufficient overseers.  Neither

ALJ Wirth nor ALJ Crovella may oversee the new proceedings, if any.

## CONCLUSION

Under directly applicable and controlling law, OOCL is presently suffering an

irreparable constitutional injury by being subject to two FMC proceedings conducted

before an improperly insulated executive officer.  Further, the recent *BBBY* ID is replete

with constitutional violations that warrant a TRO and preliminary injunction.  In addition

to the instances discussed above, the ID had the effect of improperly usurping Congress'

power to modify private contracts in violation of the nondelegation doctrine (see, e.g., *In

re Boulders on the River, Inc.*, 218 B.R. 528, 538 (D. Or. 1997) ("Congress possesses the

authority to modify private contracts, governed only by the Fifth Amendment's prohibition

on the taking of property without just compensation."), and of violating the Shipping Act

12

(see 46 U.S.C. § 40502(f) – "the exclusive remedy for a breach of a service contract is an action in an appropriate court").

OOCL has carried its burden on all four factors to show a right to a temporary restraining order and a preliminary injunction. The Court should therefore enjoin the FMC and ALJs Wirth and Crovella from issuing any further rulings, vacate the ID and all other decisions/ruling entered in the FMC cases, suspend the administrative proceedings discussed herein pending resolution of this case, and further grant all such other and further relief as may be just and proper.

Houston, Texas

May 12, 2026

Respectfully submitted,

BLANK ROME LLP

*/s/ Keith B. Letourneau*
Keith B. Letourneau (Attorney-in-charge)
State Bar No. 00795893
Federal I.D. No. 20041
Zachary Cain
State Bar No. 24078297
Federal I.D. No. 1829905
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605
kletourneau@blankrome.com
zcain@blankrome.com

*Attorneys for Orient Overseas Container Line Limited, OOCL (Europe) Limited, and OOCL (USA) Inc.*

## CERTIFICATE OF WORD COUNT

Pursuant to this Court's Procedure 18(c), I hereby certify that the foregoing submission contains 3,384 words in the body of the pleading, as determined by the word-processor word count function.

*/s/ Keith B. Letourneau*
Keith B. Letourneau

## CERTIFICATE OF SERVICE

While Defendant the United States of America was served with the Complaint in this action via hand delivery to the office of the U.S. Attorney's Office for the Southern District of Texas, the other Defendants in this matter refused to accept in-person service, and were accordingly served with process via the U.S. Postal Service by certified mail, return receipt requested. However, none of the Defendants have yet entered an appearance in this matter. Given the circumstances, I hereby certify that a copy of the foregoing instrument will be hand delivered to the U.S. Attorney's Office for the Southern District of Texas, along with a copy of the Court's Order dated May 7, 2026 (Dkt. 8), which set the deadline for Defendants to file their response to OOCL's motion for injunctive relief.

*/s/ Keith B. Letourneau*
Keith B. Letourneau